**07-MC-0014**

UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

FILED
UNITED STATES DISTRICT COURT
DENVER, COLO.

FEB 12 2007

GREGORY C. LANGHAM
CLERK

| | | |
|---|---|---|
| SECURITIES AND EXCHANGE COMMISSION, | ) ) ) | |
| Plaintiff, | ) ) | |
| v. | ) ) | Case No: 04 C 8279 Judge Rebecca R. Pallmeyer |
| BRAD A. WEAVER, BETA ASSET MANAGEMENT, INC., | ) ) ) | Magistrate Judge Geraldine Soat Brown |
| Defendants. | ) ) | |

### ORDER APPOINTING A RECEIVER

Plaintiff, Securities and Exchange Commission ("Commission"), requested that the Court appoint a Receiver for the benefit of investors to marshal, conserve, protect, hold funds, operate and, with the approval of the Court, dispose of all assets of any nature, wherever those assets may be found, in which Brad A. Weaver and Beta Asset Management, Inc. ("Defendants") have a legal, equitable or beneficial interest, including money that Defendants improperly paid to investors (collectively "Receivership Property").

The Commission requests the appointment of James L. Kopecky as receiver over Defendants and the Receivership Property.

1. The Receiver shall have the following powers and duties to fulfill his obligations:

    a. Use reasonable efforts to determine the nature, location, and value of all assets and property owned by Defendants and their affiliates, in their possession or subject to their control;

b. Use reasonable efforts to determine the identity of all of Defendants' investors; the amount of money that Defendants received from each investor; the amount of money that Defendants' paid to each investor; and seek to recover excessive payments, if any paid to certain investors, for more equitable distribution;

c. Engage and employ, with the approval of the Court, any accounting firms or other necessary individuals or entities the Receiver deems necessary to assist in his duties ("Retained Personnel");

d. Take such action as necessary and appropriate to prevent the dissipation or concealment by Defendants or their affiliates of any funds or assets constituting Receivership Property and otherwise preserve any such funds and assets;

e. The Receiver shall have the authority to issue subpoenas to compel testimony of persons or production of records, consistent with the Federal Rules of Civil Procedure, concerning any subject matter relating to the identification, preservation, collection and/or liquidation of the Receivership Property, including, without limitation, Defendants and their affiliated entities' assets, money received from or paid to investors, or otherwise related to the discharge of the Receiver's duties;

f. Oversee the operations of any and all businesses owned or controlled by Defendants or otherwise constituting a part of the

Receivership Property; and

g. The Receiver may bring such legal actions based on law or equity in any state, federal, or foreign court as he deems necessary or appropriate in discharging his duties as Receiver or on behalf of investors whose interests he is protecting.

2. Within sixty (30) days of his appointment as Receiver, or such longer time as the Court may approve, the Receiver shall file an inventory and appraisal of all property and assets in Defendants' possession, custody or control or in which Defendants hold a beneficial interest.

3. Within thirty (30) days after the filing of the inventory, and at regular intervals of not less than three (3) months thereafter until discharged, the Receiver shall file reports of his acts and transactions in his official capacity as Receiver.

4. The Receiver shall establish one or more bank account(s), in his discretion, to deposit any of Defendants' funds frozen by prior Orders in this case and any other funds the Receiver may recover, including any money recovered from investors or derived from liquidating Receivership Property ("Receivership Accounts"). The Receiver shall use such funds for any legitimate purpose consistent with the Receiver's powers and duties and this Order, including paying fees and expenses of the Receiver and Retained Personnel, as approved by the Court.

5. The Receiver and Retained Personnel are entitled to reasonable compensation and expense reimbursement to the extent that funds are available to make such payments from the Receivership Accounts. Such compensation shall be in amounts commensurate with the services performed by the Receiver and Retained Personnel and

shall be subject to the approval of the Court. The Receiver and Retained Personnel shall apply to the Court for such compensation and expense reimbursement quarterly, beginning with the first report the Receiver files pursuant to paragraph 3 of this Order and such amounts shall be paid from the Receivership Accounts.

6. The Receiver shall not be required to post bond or give an undertaking of any type in connection with his fiduciary duties and obligations in this matter unless and until this Court so orders.

7. The Receiver and Retained Personnel are entitled to rely on all outstanding rules of law and Court orders and shall not be liable to anyone for their own good faith compliance with any order, rule, law, judgment, or decree. In no event shall the Receiver or Retained Personnel be liable to anyone for their good faith compliance with their duties and responsibilities as Receiver or Retained Personnel, nor shall the Receiver or Retained Personnel be liable to anyone for any actions taken or omitted by them except upon a finding by this Court that they acted or failed to act as a result of malfeasance, bad faith, gross negligence, or in reckless disregard of their duties.

8. Defendant Weaver is required to assist the Receiver in fulfilling his duties and obligations. As such, he must respond promptly and truthfully to all requests for information and documents from the Receiver. However, this requirement does not impinge on Weaver's rights to assert any applicable privilege.

9. All investors, creditors, and other persons, and all others acting on behalf of any such investor, creditor or other persons, including sheriffs, marshals, other officers, deputies, servants, agents, employees and attorneys, are stayed from:

    a. Commencing, prosecuting, continuing or enforcing any suit or

        proceeding against or affecting Defendants or any other part of the Receivership Property, except that such actions may be filed to toll any statutes of limitations;

    b.    Using self-help or executing or issuing or causing the execution or issuance of any court attachment, subpoena, replevin, execution, or other process for the purpose of impounding or taking possession of or interfering with or creating or enforcing a lien upon any portion of the Receivership Property, including, without limitation, any property owned by or in the possession of Defendants or the Receiver, wherever situated;

    c.    Attempting to modify, cancel, terminate, call, extinguish, revoke or accelerate (the due date), of any lease, loan, mortgage, indebtedness, security agreement or other agreement with Defendants or any entities controlled by Defendants, or otherwise affecting the Receivership Property; and

    d.    Doing any act to interfere with the taking control, possession, or management, by the Receiver, of any portion of the Receivership Property, including, without limitation, Defendants' assets and assets owned, controlled, or in the possession of the Receiver, or to in any way interfere with or harass the Receiver, or to interfere in any manner with the exclusive jurisdiction of this Court over the Receivership Property.

10.    From time to time upon application of the Receiver, the Court shall reissue

this order and upon applications of the Receiver may amend this order.

11. All persons, and all others acting on behalf of any such persons, including sheriffs, marshals, other officers, deputies, servants, agents, employees and attorneys, are ordered to turn over to the Receiver any and all property, including records of any nature in which Defendants are the owner or have an interest in, immediately upon receiving notice of the entry of this order.

Dated: 2/24/06

_____
United States District Court Judge

ED-7
FILED FOR DOCKETING
04 DEC 23 PM 2:41
CLERK
U.S. DISTRICT COURT

UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

DOCKETED
DEC 27 2004

SECURITIES AND EXCHANGE )
COMMISSION, )
 )
    Plaintiff, )
 )
  v. )
 )
BRAD A. WEAVER, BETA ASSET )
MANAGEMENT, INC., )
 )
    Defendants. )

04C 8279
Case No:

JUDGE PALLMEYER

MAGISTRATE JUDGE
GERALDINE SOAT BROWN

## COMPLAINT

Plaintiff, the United States Securities and Exchange Commission ("Commission"), for its Complaint against Brad A. Weaver ("Weaver") and Beta Asset Management, Inc. ("Beta") (collectively, "Defendants"), alleges as follows:

### INTRODUCTION

1.  The Commission brings this action to halt an ongoing ponzi scheme by Weaver and Beta. Since at least March 2003, Defendants have raised over $10 million from at least five investors by representing that they could profitably trade in the "error accounts" of a least one broker-dealer at no risk, a trading strategy that does not exist. In approximately August 2004, Defendants induced investors to "roll-over" purported error trading profits into a limited partnership. Defendants represented that the limited partnership had $30 million in assets at a company called Invesdex, Ltd. Contrary to their representations, Defendants have never had more than $30,000 in assets at Invesdex, Ltd. At least one investor has received substantial returns on his error trading investments, but Defendants have repeatedly delayed making

requested payouts to other investors, strongly suggesting that Defendants are currently attempting to raise money from new investors to repay current investors.

2. Defendants, directly and indirectly engaged in and, unless enjoined, will continue to engage in transactions, acts, practices and courses of business which violate Section 17(a) of the Securities Act of 1933 ("Securities Act") (15 U.S.C. § 77q(a)), Section 10(b) of the Securities Exchange Act of 1934 ("Exchange Act") (15 U.S.C. § 78j(b)) and Rule 10b-5 promulgated thereunder (17 C.F.R. 240.10b-5).

3. The Commission brings this action to enjoin such transactions, acts, practices and courses of business and for other relief, pursuant to Sections 20(b) and 20(d) of the Securities Act (15 U.S.C. § 77t(b), (d)) and Sections 21(d) and 21(e) of the Exchange Act (15 U.S.C. § 78u(d)-(e)).

## JURISDICTION

4. This court has jurisdiction pursuant to Section 22(a) of the Securities Act (15 U.S.C. § 77v(a)) and Section 27 of the Exchange Act (15 U.S.C. § 78aa).

## THE DEFENDANTS

5. Brad A. Weaver, age 33, is a resident of Chicago, Illinois. He currently holds himself out as the president of Beta. Weaver was employed as a registered representative by Raymond James Financial Services, Inc., ("Raymond James"), a registered broker-dealer, from 1999 until April 15, 2003. Weaver resigned from Raymond James after an internal review determined that Weaver commingled customer funds with his own funds.

6. Beta Asset Management, Inc. is an Illinois corporation with a principal place of business in Chicago, Illinois. Beta is not registered with the Commission in any capacity.

## OTHER ENTITIES AFFILIATED WITH WEAVER

7.  Beta Capital Partners, L.P. ("Beta Partners") is a limited partnership formed by Weaver in early 2004. According to the partnership's offering memorandum, the minimum investment for a partnership share is $250,000. The offering memorandum also states that the partnership will engage primarily in intermediate term trading of Rydex mutual funds shares and Invesdex Marketplus Security.

8.  Beta Capital Management, LLC ("Beta Capital") is an Illinois limited liability company incorporated by Weaver on March 12, 2004. Beta Capital is the general partner of Beta Partners.

9.  Beta Capital Advisors, LLC ("Beta Advisors") is an Illinois limited liability company incorporated by Weaver on March 12, 2004. Beta Advisors is the investment adviser of Beta Partners.

## FACTUAL BACKGROUND

### Weaver's Misrepresentations to Investors Concerning Error Account Trades

10.  Beginning in at least March 2003, while he was still associated with Raymond James, Weaver falsely told at least five investors that he could make profitable options trades in error accounts at Raymond James.

11.  Broker-dealers such as Raymond James maintain error accounts for depositing securities and funds resulting from erroneous trades. An example of an erroneous trade is the purchase of 1,000 call options when a customer requested the purchase of only 100. In that instance, the broker-dealer must sell the 900 calls purchased in error in order to correct the error. The correction may result in a profit or a loss. Weaver told his investors that he could "capture" profitable errors in options trades from Raymond James' error accounts for his investors.

12. Weaver represented that he would receive no compensation for error account trades on behalf of this investors. He further represented that his goal was to increase his investors' asset base to a level high enough so that he could trade in hedge funds.

13. Based on Weaver's oral representations, at least five investors gave Defendants over $10 million for error account trading. One of those investors, a North Carolina resident ("North Carolina Investor"), transferred approximately $2.9 million to Beta in 23 separate transactions from March 2003 through July 2004. The North Carolina Investor made each transfer after Weaver informed him that an error account trade was available, the amount of the trade and the profit to be obtained from the trade. After each alleged trade, the North Carolina Investor received a document purporting to be a trade confirmation showing the simultaneous purchase and sale of options for a profit.

14. Contrary to Defendants' representations, it is not possible to trade in the error accounts of broker-dealers such as Raymond James. According to Raymond James, the firm retains all profits from erroneous trades. The firm also maintains policies and procedures that effectively prevent its registered representatives or other persons from obtaining access to the firm's error accounts.

15. Although Defendants' purported error account trading strategy could not have existed, the North Carolina Investor received payments from Beta totaling $5.6 million between July 2003 and June 2004, representing a profit of approximately $2.7 million, just months after his initial investments. Since June 2004, Defendants have repeatedly represented to the North Carolina investor that he has an additional $5 million to $14 million in profits in his "account."

16. Another investor ("Investor B") also gave Weaver and Beta money for so-called error account trading. However, despite repeated demands to have his money returned, Weaver

and Beta still owe Investor B over $7 million in principal, not counting any promised returns. A third investor who gave Defendants $90,000 for error account trading has not received any payouts. A fourth investor has had his principal investment of approximately $370,000 returned to him, but has not received any promised profits.

### Weaver's Misrepresentations Regarding the Transfer of Funds to a Limited Partnership

17. In approximately August 2004, the North Carolina Investor told Weaver that he needed to withdraw funds by September 15 so that he could make federal and state estimated income tax payments.

18. Weaver told the North Carolina Investor that, unless he agreed to sign documents for the purchase of a limited partnership interest in Beta Partners, an entity Weaver had recently formed, it would be difficult for him to receive the funds by September 15. In addition, Weaver told the North Carolina Investor that, if he did not agree to sign the limited partnership documents, the Internal Revenue Service would withhold 30 percent of the amount distributed to him. Based on Weaver's representations, the North Carolina Investor signed the documents.

19. Weaver subsequently told the North Carolina Investor that he had rolled-over his purported remaining error trading profits into Beta Partners, but the North Carolina Investor never received the promised funds. At least three other investors also rolled-over their money into Beta Partners.

20. In the fall of 2004, after repeated requests from the North Carolina Investor for the return of his profits, Weaver told the North Carolina Investor that he had opened an account at Invesdex, Ltd. with investor funds totaling $30 million. Invesdex Ltd ("Indvesdex") is the

licensor of a security called MarketPlus, which competes with products such as exchange traded funds and mutual funds that cater to active management.

21. On October 26, Weaver sent the North Carolina Investor a copy of a computer screen page from Invesdex purportedly showing a balance of $30 million in the account. Weaver, in fact, had opened a simulation account that permits potential clients to simulate the results of a trading model without risking actual funds. Weaver used the simulation account balance to mislead the North Carolina Investor into believing the account had actual funds.

22. In a November 12, 2004 letter, Weaver falsely represented to the North Carolina Investor that his share of the $30 million account balance at Invesdex was $14,862,000. The letter from Weaver contains a fake co-signature by a Paul Seritelli, EVP of Operations of Invesdex, Ltd. There is not and never has been a Paul Seritelli employed by Invesdex.

23. Contrary to Weaver's misrepresentations, Beta Partners did not deposit any funds with Invesdex until December 7, 2004. At that time, Beta Partners deposited only $30,000 with Invesdex. There has been no change in the amount invested since December 7, although Weaver requested a withdrawal of approximately $1,700 within the last week which has not been processed.

24. Since at least June, 2004, Weaver has made repeated representations to at least five investors that they will receive payouts on their investments, but he has not made any of those payments as promised. Weaver has represented to the North Carolina investor that he will receive $10 million on January 14, 2005.

### Weaver's Fraudulent Conduct is Ongoing

25. On December 20, 2004 Weaver made numerous misstatements to a prospective investor regarding his ongoing, successful, error account trading, and the returns generated by Beta Capital, in an attempt to obtain a substantial investment.

### COUNT I

### Violations of Section 17(a)(1) of the Securities Act

26. Paragraphs 1 through 25 are realleged and incorporated by reference as though fully set forth herein.

27. By engaging in the conduct described above, Defendants, in the offer and sale of securities, by the use of the means and instruments of transportation or communication in interstate commerce or by use of the mails, directly or indirectly, have employed devices, schemes and artifices to defraud.

28. Defendants intentionally or recklessly made the untrue statements and omissions and engaged in the devices, schemes, artifices, transactions, acts, practices and courses of business described above.

29. By reason of the foregoing, Defendants have violated and, unless enjoined, will continue to violate Section 17(a)(1) of the Securities Act (15 U.S.C. § 77q(a)(1)).

## COUNT II

### Violations of Sections 17(a)(2) and (3) of the Securities Act

30. Paragraphs 1 through 25 are realleged and incorporated by reference as though fully set forth herein.

31. By engaging in the conduct described above, Defendants, in the offer and sale of securities, by the use of the means and instruments of transportation or communication in interstate commerce or by use of the mails, directly or indirectly, have:

   a. obtained money or property by means of untrue statements of material fact or by omitting to state material facts necessary in order to make the statements made, in light of the circumstances under which they were made, not misleading; and

   b. engaged in transactions, practices, or courses of business that operated or would operate as a fraud or deceit upon the purchasers of such securities.

32. Defendants made the untrue statements and omissions of material fact and engaged in the devices, schemes, artifices, transactions, acts, practices and courses of business described above.

33. By reason of the foregoing, Defendants have violated and, unless enjoined, will continue to violate Sections 17(a)(2) and (3) of the Securities Act (15 U.S.C. § 77q(a)(2)-(3)).

## COUNT III

**Violations of Section 10(b) of the Exchange Act and Rule 10b-5 Thereunder**

34. Paragraphs 1 through 25 are realleged and incorporated by reference as though fully set forth herein.

35. By engaging in the conduct described above, Defendants, in connection with the purchase and sale of securities, by the use of means or instrumentalities of interstate commerce and of the mails, directly or indirectly, have:

  a. employed devices, schemes, and artifices to defraud;

  b. made untrue statements of material facts and omitted to state material facts necessary in order to make the statements made, in the light of the circumstances under which they were made, not misleading; and

  c. engaged in acts, practices or courses of business which would and did operate as a fraud or deceit upon the purchasers and sellers of such securities.

36. Defendants intentionally or recklessly made the untrue statements and omissions and engaged in the devices, schemes, artifices, transactions, acts, practices and courses of business described above.

37. By reason of the foregoing, Defendants violated and, unless enjoined, will continue to violate Section 10(b) of the Exchange Act (15 U.S.C. § 78j(b)) and Rule 10b-5 thereunder (17 C.F.R. 240.10b-5).

## RELIEF REQUESTED

THEREFORE, the Commission requests that the Court:

### I.

Find that Defendants committed the violations charged and alleged herein.

### II.

Enter a temporary restraining order, and orders of preliminary and permanent injunction, in a form consistent with Rule 65(d) of the Federal Rules of Civil Procedure, restraining and enjoining Defendants and their officers, agents, servants, employees and attorneys, and those persons in active concert or participation with any of the foregoing who receive actual notice of such order, by personal service or otherwise, and each of them, from directly or indirectly, engaging in the transactions, acts, practices or courses of business described above, or in conduct of similar purport and object, in violation of Sections 17(a)(1), 17(a)(2) and 17(a)(3) of the Securities Act (15 U.S.C. § 77q(a)(1)-(3)], Section 10(b) of the Exchange Act (15 U.S.C. § 78j(b)) and Rule 10b-5 promulgated thereunder (17 C.F.R. 240.10b-5).

### III.

Enter a temporary restraining order and orders of preliminary and permanent injunction, in a form consistent with Rule 65(d) of the Federal Rules of Civil Procedure, restraining and enjoining Defendants and their officers, agents, servants, employees, attorneys and those persons in active concert or participation with them who receive actual notice of such orders, by personal service or otherwise, and each of them from, directly or indirectly soliciting, accepting or receiving any funds from individuals or entities for the purpose of investment.

## IV.

Enter a temporary restraining order and orders of preliminary and permanent injunction, in a form consistent with Rule 65(d) of the Federal Rules of Civil Procedure, restraining and enjoining Defendants and their officers, agents, servants, employees, attorneys and those persons in active concert or participation with them who receive actual notice of such orders, by personal service or otherwise, and each of them from, directly or indirectly:

A. transferring, selling, assigning, pledging, dissipating, concealing or otherwise disposing of in any manner, any funds, assets, accounts or other property belonging to, or directly or indirectly, in the possession, custody or control of Defendants or in which these Defendants have a beneficial interest, wherever located;

B. transferring, selling, assigning, pledging, dissipating, concealing or otherwise disposing of in any manner, any funds, assets, accounts or other property obtained or maintained with investor funds, or into which investor funds have been deposited; and

C. destroying, mutilating, concealing, altering or disposing of, in any manner, any of the books, records, documents, correspondence, brochures, manuals, obligations, belonging to, or directly or indirectly in the possession, custody or control of defendants, in whatever form, including electronic, and wherever located.

## V.

Enter an order requiring Defendants to:

A. provide the Commission, within seven days of the issuance of this Order, with an accounting of all of the funds received, directly or indirectly, from individuals or entities who gave Defendants money for investment, which accounting shall include, without limitation, a schedule indicating: (1) the date of each investment, name of each investor, amount of each

11

investment and any account into which such investments were deposited; (2) the uses to which such funds were put, including but not limited to the nature and purpose of the use of the funds, the date and amount of the disbursement and the name of the individual or entity involved in the transaction; (3) amounts of any remaining funds and their location; and (4) a separate schedule and accounting of the assets and liabilities of Defendants and their location as of December 23, 2004;

    B.    produce to the Commission, within seven days of the issuance of the temporary restraining order, all books, records and other documents supporting or underlying the accounting provided to the Commission pursuant to paragraph V.A. above; and

    C.    produce to the Commission, within seven days of the issuance of the temporary restraining order, all current accountant's reports, bank statements, documents indicating title to real or personal property, and any other indicia of ownership or interest in property of Defendants, which indicia of ownership or interest are now in the Defendants' actual or constructive possession; provided, however, that nothing in the order shall be construed to require defendants to abandon any constitutional or other legal privilege which they may have available to them.

## VI.

Enter an order requiring Defendants to disgorge the ill-gotten gains that they received as a result of their wrongful conduct, including prejudgment interest.

12

## VII.

Enter an order imposing upon Defendants appropriate civil penalties pursuant to Section 20(d) of the Securities Act (15 U.S.C. § 77t(d)) and Section 20(d)(3) of the Exchange Act (15 U.S.C. § 78u(d)(3)).

## VIII.

Retain jurisdiction of this action in accordance with the principals of equity and the Federal Rules of Civil Procedure in order to implement and carry out the terms of all orders and decrees that may be entered or to entertain any suitable application or motion for additional relief within the jurisdiction of this Court.

## IX.

Grant orders for such further relief as the Court deems appropriate.

Respectfully submitted,

*[signature]*

Jerrold H. Kohn, Illinois Bar No. 6188085
Thomas J. Meier, Illinois Bar No. 6225621
Paul A. Montoya, Illinois Bar No. 6229890
Attorneys for Plaintiff
Securities and Exchange Commission
175 W. Jackson Boulevard
Suite 900
Chicago, Illinois 60604-2615
(312) 353-7390

Dated: December 23, 2004